Good morning, Your Honors. May it please the Court, Matthew G. Holt for the Petitioner, Jose Luis Cedillo-Burgos. He's a Father of Four. He's lived in the United States for 30 plus years. He's had no criminal history for 30 years. But prior to that, he did have some criminal history and he was removed. He came back. He lived here without problems all the way up until 2017. And for the past eight years, the government has made considerable effort to reinstate that order. In response, he's applied for withholding of removal and convention against torture, which the Immigration Judge and the Board of Immigration Appeal both denied. Issues of judicial misconduct were raised by prior counsel and then by the second prior counsel, Mr. Nelson, who briefed this case for this Court, but is not here today because he is now an Immigration Judge. Accordingly, I am here to discuss how judicial misconduct undermined Petitioner's due process rights as an asylum seeker and specifically to address the impact of the due process violations on his cap claim. INA Section 240.B.4.B. states that the applicant or Petitioner should have a reasonable opportunity to present evidence on their behalf. 8 CFR 1229.AB1 obliges an Immigration Judge to receive evidence. 8 CFR 1208.16C.3 states the Court may consider, among other factors, evidence of gross, flagrant, or mass violations of human rights within the country of removal and other relevant information in the country of removal. In this case, both Judge O'Connor, at the local level in San Diego I'm very familiar with, and the Board of Immigration Appeals, failed to protect this applicant's due process rights. The hearing was combative, to say the least. It was prejudicial, and it resulted in an unfair decision. Can you explain how it was prejudicial? We're familiar with your argument and what happened in the hearing, so let's just assume for this question that he was prevented from presenting more evidence, but we don't really know what that evidence would be, so it's hard to tell whether the CAT claim could have come out differently. Can you explain how he would have presented more evidence to show an inability to relocate as one of the issues? Thank you, Your Honor. Internal relocation, there is a two-prong test for internal relocation. Neither of the prongs were considered by the Immigration Judge or by the Board of Immigration whether they did what they were supposed to do. He's afraid of a police officer based on a personal grievance from 30-plus years ago, but the threats to the family didn't start occurring, and the three kidnappings and the one suspected murder because the person disappeared and was never returned even after the ransom was paid. All of this started to happen around 2009, which is when this man became a municipal police officer. Later, it was reported that he became part of organized crime in 2014. The prejudice here is that the Immigration Judge had a duty to develop the record. He was so focused... So you're saying that we don't need to know the exact testimony of the other witnesses that your client was hoping to put forward because the fact that there was potentially some evidence that could have come into the record to establish that relocation was not possible is enough on a due process violation to grant the petition? It is enough. It's not required to have all of the information that wasn't provided previously in order to make the determination. Here, the judge was so focused on figuring out, was it written on a declaration from 16 months prior, and if it wasn't, I don't want to hear about it, that he failed to allow the record to develop, and that he failed to consider the country condition reports. When we talk about torture convention, when we talk about acquiescence by government officials of torture, when we talk about police officers acting under color of law to persecute people individually for personal grievances, when we talk about these things, we have to look at the country conditions, and he didn't do that. He didn't cite anything in the record for country conditions, and neither did the Board of Immigration Appeals. If we look at the country conditions that were provided... Sorry, that seems like a different kind of argument, though. If you're saying that we have a different argument than if there hadn't been discouragement of presenting other witnesses, we'd have different evidence. I think one demonstrates the other. The immigration judge was so... Why do we have to get to the country conditions evidence if we can determine that the failure to allow the testimony from, I think, something like four other witnesses didn't develop, and that alone constitutes a due process violation, and the fact that we don't know what would have happened is the prejudice. I would prefer that it be remanded for that reason, but if the court would not find that there was prejudice based on how he treated the five witnesses that did not testify, and the two, including himself, that did, if the court was to not find that there was prejudice...  As an alternative, the country conditions, the Attorney General from Guerrero, in the report, says that they don't have the ability to protect themselves, basically, from the cartels. Can I ask about the family theory? Is your theory that the targeting of the family all stems from the vendetta that Rocha has against her client, or is the family targeting from some other source? It seemed, from the record, and I wasn't there, but I've read it, from the record, it appears that Rosalina is vindictive against Mr. Cedillo, and as a result of Mr. Cedillo not being there, he is vindictive in expressing that towards his family members, and he's using his role as a police officer and his connections to organized crime to get away with it. So the answer is it does all stem from the vendetta, it sounds like. Yes, he did testify, Mr. Cedillo did testify, and I think it was a statement against his own interests, really, but I think it shows his credibility that other people in the town also do have problems, but in this case, it's Rosalina saying, if your brother comes back, I'm going to kill him. That's very clear, and it's him showing up at his sister's restaurant a couple times a week and making her feed him and his colleagues for free, it's making his brother give up land or the benefits from cultivating that land for his safety. It's three kidnappings, it's one disappearance, and there is no other motive that started this other than what happened here. So do you believe that the error was that the agency put the burden on your client to establish an ability to relocate, and that that was an error? So for internal relocation at 8 CFR 1208.13.B1, the second step of the increase, whether under all the circumstances it would be reasonable to expect the applicant to do so. Under all the circumstances it would be reasonable. There's not a shadow of a doubt in my mind that this court didn't, that that court, that judge, Judge O'Connor, did not consider all the circumstances when considering relocation. I'd like to leave for the last minute and a half for rebuttal. Thank you very much. May it please the court, genuinely on behalf of the respondent, the Attorney General of the United States. I'd like to start my argument by focusing purely on prejudice in due process. So subject to the court's questions with regard to the substantive claims about withholding in cap, we'd like to rely on our brief. The petition for review in this case should be denied because the petitioner cannot show prejudice. As an initial matter, any discussion with regard to the matter of LEA, the Petito Social Group continues to discuss the matter of LEA. It's all irrelevant to his withholding claim because his withholding claim turns only on nexus. His fear was based on vengeance and vengeance is not a protected realm. So the only issue in this case is prejudice and the cap claim. But where is the prejudice? As Judge Friedman asked, like, how is, how is he prejudiced? We don't even know what evidence he would have presented at the point that, because we don't know what evidence he would have presented, that could have potentially affected the outcome of the cap claim. That is the prejudice. Well, you have to point to, according to this court's case law, you have to point to something or say something as to what that evidence would be. For example, in Hussain, a 2021 case, the petitioner in that case claimed that he would have provided more details if asked about his political or religious background. But he didn't point to any additional evidence he would have presented. And in that case, the court found that the petitioner cannot claim that he was prejudiced when he was, when the immigration judge's exact questioning could have elicited the very responses he claims that he was unable to provide. But here he had four other witnesses present who were not allowed to testify, and they were there ready. The judge would not let them even make a record of what they would have testified about. Doesn't that show the prejudice? No, Your Honor, not in this case, because the petitioner testified fully. His witness testified as to beyond what her declaration stated. And after an exchange between petitioner's counsel and the immigration judge, the petitioner proffered his witnesses. So he said, I'd just like to proffer their declarations or affidavits for their testimony. So it was, so there is no evidence here that the petitioner did not get to present. Again, he testified fully as to what his CAD claim is, what his fear was, and his witness also testified fully as to what she thought, what harm would come to him. But his evidence did not bear fruit. And in Gomez, Alaska, a 2018 case from this court, the court found that there is no prejudice if the outcome would be the same even without the violation. So you're saying we definitely know that the four witnesses who didn't testify wouldn't have added anything? That is correct, Your Honor, because we have their affidavits. They were proffered. We have them. You can read them. They basically said that we're actually saying, I think, correct me if I'm wrong, that we should stand in the shoes of the fact finder. And because we have the proffered declarations, we can consider that and make a determination as if we are deciding this issue in the first instance. Well, if it were to do a substantial evidence review, then obviously the court, people would not ask the court to do that. But, however, we're asking the court to do an over-review as to the due process violation. And in order to do that, in order for the court to determine whether there is prejudice, the court can look at the declarations to see what prejudice would be available. But didn't the immigration judge here make it clear that he would not allow people to testify about anything that wasn't included in their affidavits? There was a heated exchange between the petitioner's counsel and the immigration judge with regard to that. However, the petitioner's witness was called, and she did testify beyond what was in her declaration. So even though there was that exchange, it wasn't that he didn't let him call the other witnesses. That was the petitioner's counsel's decision not to call them. I thought the judge said that he didn't think the four could testify beyond the affidavits. And after the exchange, the petitioner's counsel was the one that made the call. But why wasn't – I mean, if they weren't going to be allowed to testify beyond the affidavits, then there's nothing they can add sort of by definition. But if they were trying to add something to the affidavits with their testimony, then it seems like that does depend on the judge's ruling. But even though that is what petitioner's counsel – it sort of seems circular, your argument, which is that it was the counsel's choice not to put forward the witnesses, but the judge had already said, I'm not going to allow any testimony other than what's in the declaration. And then you're telling us, well, we should just look at the declaration because those were proffered and that's enough. But the question is whether or not the petitioner had an opportunity to put forward witnesses that were not cabined by any restraint in their declaration, which is what the IJ did here. So it doesn't – I don't think you can make both arguments. I think I understand your question, Arnott. But even though there was that exchange where petitioner's counsel thought that he would be limited, when he was questioning the witness, it was clear that she was going beyond the affidavit and he was asking her questions about things that happened beyond her affidavit. So the petitioner's counsel was present, and it was aware that even though the immigration judge told him, like, you know, you need to keep everything, all the testimony within the affidavit, that it went beyond it. He knew he could do that. But you're saying – so you're saying that the lawyer needed to not believe the judge's ruling. Like, we have to assume that the lawyer would have thought that the four witnesses could have testified beyond the affidavit even though the judge said they couldn't? Well, we know that based on the record because that's what happened. The witness testified beyond her affidavit even though the immigration judge and the petitioner's counsel had that exchange. So is there any rule in immigration court that you can't testify beyond what's in an affidavit, or was that just the judge's ruling? So I believe that was just the judge's ruling. However, if a person provides an affidavit and they testify beyond that, then their credibility can be called to question, and the immigration judge – That's just a credibility finding. Yes, Your Honor. There's not a rule that precludes them from testifying to additional information. That is correct, Your Honor. There's no rule that precludes them, but it would go to the credibility, which would defeat the purpose of their testifying. Well, isn't part of the argument here that they would have testified to more recent events that could be relevant to his risk of torture? Well, that's what his witness did testify to with regard to her going down to Mexico for Mother's Day in May of 2017, and there was the car chase. So they could have testified to it. And, again, when we have a due process prejudice claim, petitioner needs to present something as to what they would have presented. We have the petitioner, we have the witnesses, and they never informed the agency, they never informed this court what that evidence is. So you're asking us to come up with what claim they would have made had we not known. You're asking us to conclude that none of that evidence would make any difference. I'm asking the court to conclude that because his petition was burned to show that there was prejudice, and he can't show it with the evidence as presented. How could he do that when the witnesses didn't get to testify? He could have done that through his testimony. He could have done that with his witness's testimony. It could have been presented in the witness's declarations, but it wasn't there. He could have presented affidavits afterwards saying this is what we would have testified to had the immigration judge not cut us off, but that was not there. The last point is the only one that makes any sense to me. So you're saying he had an opportunity to submit affidavits that would have filled in what wasn't allowed to be done already? Yes, of course, Your Honor. After the hearing, he could have filed a motion to reopen with affidavits saying we were prevented from presenting this evidence. He did not do that. Is there any case that says you can't bring a due process claim without filing a motion to reopen first? No, Your Honor. But I have very little time. Is that the procedure that he would have had to do, that was file a motion to reopen? That's what he could have done, yes, Your Honor. But, again, when he filed his brief to the board, he did not present what evidence that he was prevented from presenting. I would like to briefly say that we can't infer prejudice in this case, unlike the case of Cano, Morito, where the immigration judge basically told the pro se petitioner that you don't have an asylum claim. And it's not like the case of Colanar, where the immigration judge had prejudged the petitioner's asylum claim and was a partisan adjudicator and refused to let that petitioner testify. In those cases, prejudice was presumed because it was clear that the petitioners were not able to present their claim. Here, the petitioner was able to present the claim. It was not so fundamentally unfair that he was prevented from presenting evidence. Again, he was represented from November of 2017 and beyond by the same attorney in the immigration court. He filed over 340 pages of supplemental documents, including affidavits. He had witnesses. His attorney chose not to present all the witnesses. We have you over your time, so could you wrap up when you're ready? Yes, Your Honor. As the court in Rodriguez-Zuniga advised, it is worth taking a step back to consider the uncontested facts of this case. What is his CAT claim? It stems from 1991, when he was in a soccer game and he knocked out the teeth of this man named Rossellino. He last had interactions with Rossellino in the 1990s. Petitioner, what is the matter? I'm sorry, I think I need to cut you off because you're over your time. Thank you very much. Thank you, Your Honor. For those reasons, respond and ask that the petitioner firm be defined. Thank you. Yes, it started in 1991, but Rafael disappeared in 2017, and they kidnapped the others in the last few years as well. I want to just use this last 67 seconds as best I can. The judge set a filing deadline 16 months before the hearing. The attorney complied with the filing deadline. The practice manual requires 30 days if not detained, 15 days if detained. That's how long before hearing you're supposed to file things so that things don't go stale, so that there's not additional information or circumstances or events that have to somehow make their way into the record. I've been practicing immigration law for 18 years. I've never done a deposition. Judge O'Connor wants depositions. He wants fully, fully discussed matters before he goes into court, and it's impossible in this type of setting with things moving the way they do. I want to point at the 9th Circuit's 2002 Cano-Morita decision, where a petitioner doesn't have to provide exactly what evidence he would have presented in support of his application. The court may infer prejudice in the absence as to what evidence the applicant would have presented. I want to point to 9th Circuit's 2005 decision in Zlotkin v. Gonzalez, where the due process violation occurred because the immigration judge prejudged the case and excluded testimony of several key witnesses, including family members. And I want to reiterate Jacinto v. INS, the 9th Circuit 2000 decision, where a full exploration of all the facts is critical to correctly determine where an asylum seeker does indeed face persecution in their homeland because failing to do so becomes an issue of life or death. The judge said that the government attorney in the hearing at page 185 said the respondent has a right to present his evidence. She's an immigration judge now, too. The judge responded, she's just repeating multiple levels of hearsay. I don't know who the source of any of this is. Later he said, later he said that. We have you over your time now, too, so I think you need to wrap up. All right. The case needs to be remanded because the I.J. and the B.I. failed to consider much less examined evidence. The I.J. restricted testimony. Had the I.J. been more focused on developing the record, not curbing the record, he would have read about the widespread police corruption in Guerrero and that the state's own attorney general at 437 of the record states of Guerrero doesn't have the capacity to confront organized crime. That to me sounds like the government that is aware of criminal activity and powerless to stop it, and here specifically the Mexican government through a police officer named Rosalino will abuse and persecute and harm Mr. Cedillo if he's forced to leave. Thank you. Thank you. Those are our arguments. This case is submitted.
judges: FRIEDLAND, DESAI, Schreier